

STATE OF MAINE                          Superior Court
Somerset, ss                            Civil Action
                                        Docket No. : CV-17-

MARK PANTERMOLLER,            )
                              )         SOMERSET COUNTY COURT
          Plaintiff           )         JUN 6 '17 PM 1:54
vs.                           )
                              )
TOWN OF FAIRFIELD,            )
FAIRFIELD POLICE DEPARTMENT,  )
MICHELLE FLEWELLING,          )         COMPLAINT, MOTION FOR
CASEY DUGAS,                  )         DECLARATORY JUDGMENT,
MATTHEW WILCOX,               )         INCORPORATED
THOMAS GOULD,                 )         MEMORANDUM OF LAW AND
                              )         JURY TRIAL DEMAND
*All individually & in their professional*)
*capacities*                  )
          Defendants          )

NOW COMES Plaintiff Mark Pantermoller, ("Pantermoller") in the above entitled matter, by and through undersigned counsel on his behalf and brings forth this complaint and also moves for a declaratory judgment against the Defendants, Town of Fairfield, ("Fairfield"), Fairfield Police Department ("FPD"), Thomas Gould, ("Gould"), Michelle Flewelling, ("Flewelling"), Casey Dugas, ("Dugas"), and Matthew Wilcox, ("Wilcox") and alleges as follows:

## JURISDICTION AND NATURE OF THE COMPLAINT

1.     This is an action to remedy and enjoin Defendants' tortious actions directed at Plaintiff Pantermoller. The parties at all relevant times to this matter resided and/or conducted business in the State of Maine, County of Somerset.

2.     Defendants' wrongful and unlawful acts include defamation, libel, negligence, NIED, IIED, malicious prosecution, invasion of privacy violation of Maine Unfair Trade Practices Act, false light, intentional misrepresentation.

1

3.      Plaintiff Pantermoller has proper jurisdiction over this matter as he complied with the notice provisions and requirements under the Maine Torts Claims Act in accordance with the provision of 14 M.R.S.A. §8107.  The parties work in Somerset County.

## FACT SUMMARY

4.      Plaintiff Mark Pantermoller, a citizen of Fairfield, Maine stopped by his local town office to inquire about a requested document.

5.      When given the purported document, Plaintiff realized it was the wrong document.

6.      He waited to talk to the town manager.

7.      The town manager stated she would not talk to him in the privacy of her office.

8.      Plaintiff politely asked the town manager to reconsider.

9.      She refused and stated she was calling the police to have Plaintiff removed.

10.     The police arrived and arrested Plaintiff for Criminal Trespass.

## FACTS

11.     On June 30, 2016, Mark Pantermoller visited the Fairfield Town Office attempting to pick up some requested documents on the subject of mutual aid between Fairfield and another town.

12.     Mr. Pantermoller had requested the aid agreement that he was told existed that governed the agreement between the towns of Fairfield and Benton police departments.

13.     Town Manager Michelle Flewelling was on the phone so Mr. Pantermoller quietly waited for her to finish.

2

14.   Flewelling hung up the phone and asked what she could do for him.

15.   Mr. Pantermoller asked if the mutual aid agreement he was expecting had come in.

16.   Flewelling said it was at the tax clerks window.

17.   When Mr. Pantermoller skimmed that document he saw that it was not the mutual aid agreement at all.

18.   Mr. Pantermoller had a few questions to ask Flewelling so he walked back across the hall to her office.

19.   When Mr. Pantermoller knocked on her door she said, "what do you need?" He stated, "If I could discuss the Fairfield policy that is not the mutual aid agreement I was told it was."

20.   She stated, "No you cannot and please leave the office building."

21.   He calmly asked again if he could talk about the incorrect paperwork he received.  She said no.  She then said that she would talk in the hallway.

22.   Mr. Pantermoller asked why he would have to talk about this in public rather than private.  She said, "Because I don't trust you."  She swiftly walked to the hallway.

23.   Mr. Pantermoller stated a public hallway was not an appropriate venue to discuss a town matter.  He sat down in a chair in the waiting room in the office and asked her to come back into the office from the hallway.

24.   Flewelling stated, "No, the police are on their way to remove you."

25.    Mr. Pantermoller did not know why she would do that or what he had done to state she did not trust him.

26.   A few minutes later, Fairfield Police officer Casey Dugas came into the town office and told Mr. Pantermoller he needed to leave.

27.    Mr. Pantermoller asked why he had to leave.  Dugas stated, "Because you were told to leave."

28.    Just then officer Matthew Wilcox entered the office.

29.    Mr. Pantermoller replied to Dugas that "this is the people's office and I am not doing anything wrong."

30.    Dugas then stated if he did not leave he would be arrested.

31.    Mr. Pantermoller stated that he would have to arrest him then.

32.    Dugas immediately arrested Mr. Pantermoller and put him in handcuffs as a third officer arrived.

33.    The officers, acting on their own accord, and without warrant or court order, had the Plaintiff's automobile towed to an impound lot, and put it on a "hold" order.

34.    Defendant Wilcox asked Mr. Pantermoller if he had a preference what towing company they called to tow his truck off town property.  Mr. Pantermoller stated he had AAA Club towing.  Wilcox stated, "No, you are under arrest, you don't get that choice anymore."

35.    The officers brought the Mr. Pantermoller to the Somerset County Jail where the they knew that the Mr. Pantermoller would be subject to "booking," which included fingerprinting, photographing, and confinement for an indefinite period of time, and possibly be subject to other types of assaults and batteries.

36.    At the Somerset County Jail Mr. Pantermoller was in fact booked, fingerprinted, photographed and held for five (5) hours before his friend was able to bail him out.

37.    Although Mr. Pantermoller was arrested with no probable cause and no warrant, the officers made no attempt to bring the him before a magistrate or

judge, when he had full opportunity to do so, being that the arrest occurred during the day on a weekday.

38.    The story of the arrest of Mr. Pantermoller was on the statewide television news that night and in the newspapers the next day.

39.    Both media outlets were told by the Defendants that Mr. Pantermoller was arrested "for creating a disturbance at the town hall." This false statement was defamatory and has caused Mr. Pantermoller permanent embarrassment and damage to his reputation.

## MEMORANDUM OF LAW

**AN ARREST IS PRESUMED TO BE FALSE.  THE OFFICER HAS THE BURDEN OF PROVING HE HAD A VALID WARRANT OR PROBABLE CAUSE THAT A CRIME HAS BEEN COMMITTED TO CONDUCT A WARRANTLESS ARREST.  IN THIS MATTER, THE DEFENDANT OFFICERS HAD NEITHER AND PERFORMED AN ILLEGAL ARREST OF THE PLAINTIFF.**

40.    For a valid arrest, a warrant must be issued and be signed (no rubber stamp) by a judge who has jurisdiction; must state the facts showing jurisdiction.

41.    If there is no warrant, a warrantless arrest  must be based upon probable cause; must name the offense committed; must contain an affidavit (under oath) by the accuser, stating FIRST HAND facts constituting a crime; must name the party to be arrested, or describe him sufficiently to identify him; must offer the warrant and the affidavit for inspection upon request; no handcuffs may be used; the officer must take him immediately before a magistrate, and hold the arrested for no other purpose (no photographs, no fingerprinting); the arresting officers and complicit individuals are responsible for everything that happens to me even if they relinquish custody to an assign;

unlawful arrest is assault, battery & trespass; there is no immunity in a false arrest case; good faith is not a defense to sustain false arrest.

42.   Arrest is presumed to be false; officer has the burden of proof.  The only thing the plaintiff needs to plead and to prove if alleging false arrest, is either (1) that the defendant made an arrest or imprisonment, or (2) that the defendant affirmatively instigated, encouraged, incited, or caused the arrest or imprisonment.  Burlington v. Josephson, 153 Fed.2d 372,276 (1946).

43.   "When the plaintiff has shown that he was arrested, imprisoned or restrained of his liberty by the defendant, "the law presumes it to be unlawful." People v. McGrew, 20 Pac. 92 (1888); Knight v. Baker, 133 P. 544(1926). "The burden is upon the defendant to show that the arrest was by authority of law." McAleer v. Good, 65 Atl. 934, 935 (1907);  Mackie v. Ambassador, 11 P.2d 6 (1932).

44.   "Any arrest made without a warrant, if challenged by the defendant, is presumptively invalid...the burden is upon the state" to justify it as authorized by statute, and as not violative of constitutional provisions. State v. Mastrian, 171 N.W.2d 695 (1969); Butler v. State, 212 So.2d 577 (Miss 1968) "As in the case of illegal arrests, the officer ... must keep within the law at his peril." Thiede v. Scandia, 217 Minn. 231, 14 N.W.2d 400 (1944).

45.  The arresting officer must show warrant upon request. "He must show it to the accused, if requested to do so." Smith v. State, 208 S.2d 747 (Miss., 1968). "If demanded, he must produce the warrant and read it to the accused, that he may know by what authority and for what cause he is deprived of his liberty." State v. Shaw, 89 S.E. 322 (1916).

46.   "An accused person, if he demands it, is entitled to have the warrant for his arrest shown to him at the time of arrest." 42 L.R.A. 682, 51 L.R.A. 211, Crosswhite v. Barnes, 124 S.E. 242, 245 (1924).

47.   "A special deputy is bound to show his warrant if requested to do so, and if he omit, the party against whom the warrant issues may resist an arrest, and

the warrant under such circumstances is no protection against an action for an assault, battery and false imprisonment." Frost v. Thomas, 24 Wendell's Rep. (N.Y.) 418, 419 (1840).

48.    "It is doubtless the duty of an officer who executes a warrant of arrest to state the nature and substance of the process which gives him the authority he professes to exercise, and, if it is demanded, to exhibit his warrant, that the party arrested may have no excuse for resistance." Shovlon v. Com., 106 Pa. 369, 5 Am. Crim. Rep. 41 (1884)

49.    "It was the duty of an officer who attempts to make an arrest to exhibit the warrant if he has one." Jones v. State, 114 Ga. 79, 39 S.E. 861 (1901)

50.    A false arrest is assault and battery. "An illegal arrest is an assault and battery.  The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery." State v. Robinson, 72 Atl.2d 262 (1950).

51.    "An arrest without warrant is a trespass, an unlawful assault upon the person ... where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether of a private citizen or a public officer, to the extent of taking the life of the assailant, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm." State v. Gum, 69 S.E. 464 (1910).

52.    "Every person has the right to resist an unlawful arrest ... and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary." Columbus v. Holmes, 152 N.E.2d 306 (1958).

53.    No handcuffs may be used in general for an arrest unless an exception exists.  "But a constable cannot justify handcuffing a prisoner unless he has attempted to escape, or unless it be necessary in order to prevent his doing so."  51 L.R.A. 216.  "The handcuffing was utterly unlawful." Osborn v. Veitch 1 Foster & Fin Eng Rep 317.

54.    The arresting officer for a valid arrest must go immediately to a

magistrate (no photographs, no fingerprinting).  "The one arresting has "a duty to immediately seek a magistrate," and failure to do so "makes a case of false imprisonment." Heath v. Boyd, 175 S.W.2d. 217 (1943); Brock v. Stimson, 108 Mass. 520 (1871).

55.    "To detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal."  Kominsky v. Durand, 12 Atl.2d. 654 (1940).

56.    "Any undue delay is unlawful and wrongful, and renders the officer himself and all persons aiding and abetting therein wrongdoers from the beginning." Ulvestad v. Dolphin, 278 Pac. 684 (1929).

57.    "The taking of the plaintiff's picture before conviction was an illegal act." Hawkins v. Kuhne, 137 NY Supp 1090, 153 App Div 216 (1912).  "The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes."  Geldon v. Finnegan, 252 N.W. 372 (1934).

58.    "Compulsory fingerprinting before conviction is an unlawful encroachment…[and] involves prohibited compulsory self-incrimination."  People v. Helvern, 215 N.Y. Supp. 417 (1926)


## APPLICATION TO THE FACTS OF THE INSTANT MATTER

59.    Defendant officers did not conduct a valid arrest of a citizen acting within his constitutional rights to ask a town official a question without being harassed, cajoled, arrested, imprisoned, detained and defamed.

60.    An invalid arrest is a trespass to the arrested and the arrestor is liable for the false arrest and ancillary damages associated therewith.

**CLAIMS FOR RELIEF**

## COUNT I:

### VIOLATION OF 5TH AMENDMENT TO THE STATE AND U.S. CONSTITUTIONS/ VIOLATION OF DUE PROCESS CLAUSE

61.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 of this Complaint.

62.     By illegally, arbitrarily, and capriciously detaining Mr. Pantermoller, a taxpaying citizen, Defendants deprived Mr. Pantermoller of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Defendants deprived him of his liberty and/or caused Mr. Pantermoller to be arrested, handcuffed, fingerprinted without reasonable basis or lawful authority.

63.      Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

64.     Defendants' conduct violated clearly established constitutional or other rights of which these Defendants knew, or of which a reasonable public official should have known.

65.     Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Pantermoller's personal safety, security, freedom, and civil and constitutional rights.

66.     These violations are compensable under Maine and federal law.

67.     As a direct and proximate result of the unlawful actions of these Defendants, Mr. Pantermoller has suffered economic damages and significant physical and emotional harm.

## COUNT II:
## FALSE ARREST/MALICIOUS PROSECUTION/ASSAULT/BATTERY

68.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 67 of this Complaint.

69.     By illegally arresting, assaulting, imprisoning, handcuffing, photographing, fingerprinting and detaining Mr. Pantermoller Defendants deliberately and unconstitutionally discriminated against Mr. Pantermoller so as to deny him equal protection of the law in violation of the Fifth Amendment to the Maine and United States Constitutions.

70.     Due to the unlawful acts of the Defendants, the Plaintiff suffered a series of assaults and batteries upon his person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, and harassment.

71.     Police officers have no right to handcuff a person without a warrant that does not pose a threat or is a risk to escape.  Plaintiff is none of these and the Defendants did not have a warrant or probable cause to arrest.

72.     Arresting and detaining a person who has committed no crime against their will constitutes false imprisonment, assault and battery.

73.     Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations. Defendants acted with the intent or purpose to discriminate against Mr. Pantermoller.

74.     These Defendants' conduct violated clearly established constitutional or other rights of which these Defendants knew, or of which a reasonable public official should have known.

75.     These Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Pantermoller's personal safety, security, freedom, and civil and constitutional rights.

10

76.     As a direct result of the actions of Defendants and their agents and employees, for which Defendants are responsible, Plaintiff has suffered damages which include physical suffering, physical inconvenience, physical discomfort, loss of time, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the emotional and physical aspects of which are continuing to this day and are likely to continue into the future.

77.     These violations are compensable under United States and Maine law. As a direct and proximate result of the unlawful actions of these Defendants, Mr. Pantermoller has suffered economic damages and significant physical and emotional harm.

### COUNT III:
### FALSE ARREST/FALSE IMPRISONMENT

78.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 77 of this Complaint.

79. On June 30, 2017, the Defendant, without warrant or due Process of law (Maine. Const., Art. 1), unlawfully arrested the Plaintiff, and acting contrary to law, did falsely imprison the Plaintiff, depriving him of his liberty,

80.     Defendants intentionally and unlawfully deprived Mr. Pantermoller of his liberty by detaining Mr. Pantermoller in jail without a legal basis to do so.

81.     Defendants were acting within the scope of their employment when they committed these acts.

82.     As a result of the Defendant's false imprisonment of the Plaintiff, the Plaintiff had his right to liberty violated, suffered mental anguish, a loss of time and wages in his work, and a discredit in his reputation by his failure to attend a scheduled meeting.

83.     Mr. Pantermoller has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT IV:
## FALSE IMPRISONMENT

84.     Plaintiff re-alleges paragraphs 1 through 86 as if brought fully herein.

85.     The Defendants, upon arresting Plaintiff, brought him to the county jail for the purpose of booking and detaining him, and, by his own admission, made no attempt to bring the Plaintiff before a proper Judge or Court as is required by due process.

86.     The acts of the Defendants in deciding how the deal with the Plaintiff after his arrest, and failing to take him to a Judge or Court to so decide, constitute false imprisonment by the Defendant under the law of the land (Maine. Const., Art. 1).

## COUNT V:
## VIOLATION OF 4TH AMENDMENT TO THE MAINE AND U.S. CONSTITUTIONS

87.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 86 of this Complaint.

88.     Defendants intentionally detained Mr. Pantermoller in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the Maine and United States Constitutions.

89.     These Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

90.     These Defendants' conduct violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have known.

91.     These Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and

demonstrate a callous disregard for, or deliberate indifference to, Mr. Pantermoller's personal safety, security, freedom, and civil and constitutional rights.

92.    These violations are compensable under state and U.S. law.  As a direct and proximate result of the unlawful actions of these Defendants, Mr. Pantermoller has suffered economic damages and significant physical and emotional harm.

**COUNT VI:**
**VIOLATION OF 5TH AMENDMENT TO THE MAINE AND U.S.**
**CONSTITUTIONS/DUE PROCESS CLAUSES**

93.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92 of this Complaint.

94.    As Town Manager and Chief of Police, Defendants Flewelling and Gould are charged with being professional, accommodating, and treating members of the public and especially the taxpaying citizens with dignity and respect.

95.    Defendants' willful acts towards Mr. Pantermoller constitute outrageous conduct insofar as they were intended to cause Mr. Pantermoller to be held in falsely arrested, assaulted, falsely imprisoned, held in custody, and all the other indignities articulated herein.

96.    Defendants intended to cause Mr. Pantermoller emotional distress, and/or acted in reckless disregard of the likelihood of causing Mr. Pantermoller emotional distress, in committing these acts.

97.    Defendants were acting within the scope of their employment when they committed these acts.

98.    As a direct and proximate result of Defendants' acts, Mr. Pantermoller suffered and continues to suffer severe mental anguish and emotional and physical distress.

99.    Mr. Pantermoller has incurred and continues to incur medical expenses and other damages in an amount to be proven at trial.

100.   Mr. Pantermoller filed a claim with the Town of Fairfield and Fairfield Police Department based on these injuries in accordance with the Maine Tort Claims Act.  More than six (6) months passed since Mr. Pantermoller filed his MTCA claim with these entities, and Mr. Pantermoller has received no response.

**COUNT VII:**
**VIOLATION OF 5TH AND 14TH AMENDMENTS TO THE MAINE AND U.S. CONSTITUTIONS (42 U.S.C. § 1983)**

101.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 100 of this Complaint.

102.   Defendants deprived Mr. Pantermoller of his constitutional right to liberty and deprived him of this liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution by causing and/or participating in the illegal, arbitrary, and capricious arrest of Mr. Pantermoller, a taxpaying citizen. Defendants caused and/or participated in Mr. Pantermoller's arrest without reasonable basis or lawful authority.

103.   Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

104.   The conduct of Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

105.   The actions, omissions, policies, patterns, practices and customs of these Defendants, complained of herein, were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mr. Pantermoller's personal safety, security, freedom, and civil and constitutional rights.

106.   These violations are compensable pursuant to U.S.C. § 1983. As a direct and proximate result of these Defendants' conduct, Mr. Pantermoller has suffered economic damages and significant physical and emotional harm.

14

**COUNT VIII:**
**VIOLATION OF 14TH AMENDMENT TO THE MAINE & U.S. CONSTITUTIONS**
**(42 U.S.C. § 1983)**

107.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 106 of this Complaint.

108.    Defendants deliberately and unconstitutionally discriminated against Mr. Pantermoller so as to deny him equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and his liberty by causing or participating in the illegal arrest, assault, battery and confinement of Mr. Pantermoller.

109.    Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.  Defendants acted with the intent or purpose to discriminate against Mr. Pantermoller.

110.    The conduct of these Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

111.    The acts, omissions, policies, patterns, practices, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mr. Pantermoller's personal safety, security, freedom, and civil and constitutional rights.

112.    These violations are compensable pursuant to U.S.C. § 1983. As a direct and proximate result of these Defendants' conduct, Mr. Pantermoller has suffered economic damages and significant physical and emotional harm.


**COUNT IX:**
**NEGLIGENCE/ABUSE OF PROCESS**

113.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 112 of this Complaint.

114.    Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in Mr. Pantermoller's wrongful detention and arrest, which these Defendants knew or should have known was immoral and wrongful.

115.    Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

- Creating and/or sanctioning illegal policies, patterns, practices;
- Failing to adequately train and supervise personnel and Defendants charged with safeguarding the welfare of citizens in citizen-owned public buildings; and
- Arresting, assaulting, detaining, holding a taxpaying citizen.

116.    Defendants were acting within the scope of their employment when they committed these acts.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT X:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

118.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 120 of this Complaint.

119.    Defendants' willful acts constitute outrageous conduct insofar as they were intended to cause Mr. Pantermoller to be singled out and discriminated against because he sought information and wanted to ask questions.

120.    Defendants intended to cause Mr. Pantermoller emotional distress, and/or acted in reckless disregard of the probability of causing Mr. Pantermoller emotional distress in committing these acts.

121.    As a direct and proximate result of the actions of Defendants, Mr. Pantermoller suffered and continues to suffer economic damages, severe mental anguish, and emotional and physical distress.

## COUNT XI:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

122.    Plaintiff re-alleges and incorporates by reference the above facts of the Complaint as if set forth fully herein

123.   All Defendants have negligently inflicted emotional distress on Plaintiff through their abusive actions.

124.   Plaintiff's career and reputation have been greatly affected by Defendants' negligent actions.

125.   Plaintiff's false arrest and other mistreatment caused him great distress. The actions caused harm that would reasonably be expected to befall the ordinary sensitive person.

126.   The Defendants' conduct caused the negligent infliction of emotional distress to Carey and they are thus liable.

## COUNT XII:
## DEFAMATION & FALSE LIGHT

127.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 124 of this Complaint.

128.    There has been a plethora of defamatory language by every one of the Defendants.

129.    Defendants defamed Plaintiff when they misstated to the news media for wide dissemination that Plaintiff was "disruptive" and that the police "would have to arrest him to get him to leave." In reality, Plaintiff was calm and not disruptive in the least bit and he stated to the police that he simply wanted to talk to the town manager, not that they would have to arrest him in order for him to leave.

130.    Plaintiff need not show malice because of his position as a private person, (although there was in fact malice present). Plaintiff need only prove negligence, which there clearly is in every case herein.

17

## COUNT XIII:
## NEGLIGENT HIRING

131.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 128 of this Complaint.

132.    The Defendant Town of Fairfield and the Fairfield Police Department are both liable for negligent hiring and training of the Defendant town manager, chief of police and the officers involved, as they clearly do not understand basic constitutional rights that a basic middle school civics class teaches.

133.    Everyone knows that all citizens are entitled to their first amendment rights of speech and peaceful assembly on public grounds.

134.    Mr. Pantermoller certainly knew this right when he attempted repeatedly to educate these troglodyte town officials by stating he had a right to be there and ask a question.

135.    Furthermore, Plaintiff has a constitutional right to be free from unlawful searches and seizures afforded by the fourth amendment to the constitution.

136.    His illegal arrest, assault and battery and false imprisonment, to name just a few of the indignities he endured, violated his fourth amendment rights.

137.    The Defendants named herein clearly would not have been hired if the hiring officials (selectmen/counsel, town manager) knew that their hires would trample the basic dignities and rights of citizens and expose them to significant legal liability.

138.    Therefore, supervising Defendants are liable for negligent hiring.


## COUNT XIV:
## NEGLIGENT SUPERVISION & TRAINING

139.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 138 of this Complaint.

140.    Supervising Defendants, including the Town, Police Department, Town Manager and Police Chief are all liable for their negligent supervision and training.

141.   Scrupulous law-abiding town officials would train their employees in the basic tenants of dealing with the public, diffusing conflict, public relations and most importantly, not blatantly violating citizen's basic human rights and constitutional rights.

142.   Unfortunately, the supervisors herein did not properly train or supervise their employees and that led to the outrageous behavior and treatment of a law-abiding citizen as outlined herein.

143.   Defendant supervisors, the town and the department are therefore liable for their negligent supervision and training.

## COUNT XV:
## MAINE UNFAIR TRADE PRACTICES ACT

144.   Plaintiff re-alleges and incorporates by reference the above facts of the Complaint as if set forth fully herein.

145.   Under the provisions of the Maine Unfair Trade Practices Act, 5 M.R.S.A.§ 213, Plaintiff through his counsel made written demand for relief as outlined in that statute.

146.   The Defendants were informed that their actions in this matter violated the Maine Unfair Trade Practices Act, 5 M.R.S.A.§ 207.

147.   As a result of this unfair and deceptive act and practice, claimant suffered injury or loss of money or property as follows: he was embarrassed, mentally abused, ridiculed, arrested, strip searched, fingerprinted, jailed, had his car towed, had to pay bail, had to hire an attorney, and other expenses.

## COUNT XVI:
## INVASION OF PRIVACY (FALSE LIGHT)

148.   Plaintiff realleges and incorporates by this reference the allegations contained above, inclusive, as though they were fully set forth herein.

149.   By publishing or causing to be published the false allegations and an untruthful arrest report published my media outlets described above, Defendants have portrayed Plaintiff in a false light.

150.   The false light created by Defendants' allegations would be highly offensive to a reasonable person.

151.   Defendants knew the statements alleged herein would create a false impression about Plaintiff and/or acted in reckless disregard of the truth.

152.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

153.   Defendants did not engage in their conduct out of any sincere or proper motive, but did so knowingly, willfully and oppressively, with full knowledge of the adverse effects that their actions would have on Plaintiff, and with willful and deliberate disregard for these consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1.  For general damages against the Defendants, jointly and severally, in an amount to be proven at trial;

2.  For special damages against the Defendants, jointly and severally, in an amount to be proven at trial;

3.  For punitive and exemplary damages against the Defendants, jointly and severally, in an amount to be proven at trial;

4.  For reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a, and any other applicable state and federal law;

5.  For injunctive relief against Defendants, requiring the Attorney General to promulgate safeguards and policies as set forth herein and to adequately train and supervise employees in order to safeguard the rights of citizens;

6. Enter judgment declaring that the policies and practices of the Defendants as described in this Complaint violated the rights of Plaintiff, and Defendants must apologize and admit their wrongdoing in an advertisement in all newspapers that covered Plaintiff's arrest; and

7. For such other relief as the Court deems just, equitable and proper.

**JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.


Dated at Rumford, Maine this 23rd day of May, 2017.

_____

Seth T. Carey, MBN 9970
Carey Law
Attorney for Plaintiff
114 Congress Street, P.O. Box 100
Rumford, ME 04276