UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARK PANTERMOLLER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | )   Civil No: 1:17-cv-00223-JDL |
| TOWN OF FAIRFIELD, *et al.* | ) |
| | ) |
| Defendants | ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56 and the Court's Report of Pre-Filing Conference under Local Rule 56(h) (Doc. No. 30) (the "Court's Report"), Defendants hereby move for summary judgment as to all of Plaintiff's claims.[1]  As set forth below and in the accompanying Defendants' Statement of Undisputed Material Facts (hereinafter, "SMF"), Defendants contend that there are no genuine issues of material fact precluding this Court entering summary judgment in favor of Defendants.

## BACKGROUND

Although Plaintiff Mark Pantermoller has filed a sixteen-count Complaint alleging various constitutional and state law violations, the heart of Plaintiff's Complaint arises from his arrest on June 30, 2016 for criminal trespass.  The undisputed facts are straightforward: Plaintiff was arrested by Officer Dugas of the Town of Fairfield Police Department after Plaintiff refused repeated orders from the Town Manager and Officer Dugas to leave the Town Manager's office.  The interaction between Officer Dugas and Plaintiff is captured on Officer Dugas' body camera.  Officer Dugas repeatedly ordered Plaintiff to leave. Plaintiff refused to leave and insisted that the Town Manager had to speak with him in her office.  Officer Dugas warned Plaintiff several times that he would be arrested for criminal trespass if he did not leave. Plaintiff refused to leave and was arrested.

---

[1] Plaintiff voluntarily dismissed the Fairfield Police Department as a defendant. *See* Court's Report (Doc. No. 30); Voluntary Dismissal (Doc. No. 31).

Plaintiff was subsequently charged with criminal trespass.  On February 6, 2017, the charges were filed for one year.

## ARGUMENT

Plaintiff alleges violations of his federal and state constitutional rights, as well as state law torts.[2] The Complaint suggests that Plaintiff is asserting multiple, separate claims based on his alleged false arrest, *see, e.g.* Complaint, Counts II-IV, however, it is "most appropriate to view the allegations as stating a single claim for violation of [plaintiff's] Fourth Amendment right to be free from an unreasonable seizure."  *Pena-Borrero v. Estremeda*, 365 F.3d 7, 13 n.8 (1st Cir. 2004); *see also Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807 (1994) (plurality opinion) ("deprivations of liberty that go hand in hand with criminal prosecutions" are properly analyzed under the Fourth Amendment).  The disposition of Plaintiff's Section 1983 claims controls the outcome of Plaintiff's claims for violations of his state constitutional rights.[3]  *See Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007).  The disposition of Plaintiff's § 1983 claim also informs the disposition of Plaintiff's claims under the Maine Tort Claims Act.  *Id.* at 86; *see also Parker v. Dall-Leighton, et al.*, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017). Despite his convoluted Complaint, Plaintiff's claims can

---

[2] Plaintiff's Complaint alleges: violations of the Maine and United States Constitutions based on his alleged false arrest (Counts I-VIII); municipal liability claims (Counts VIII, XIII & XIV); state law tort of false arrest, assault, battery, and malicious prosecution (Count II), negligence/abuse of process (Count IX) intentional and negligent infliction of emotional distress (Counts X & XI), defamation and invasion of privacy/false light (Counts XII & XVI) and; a violation of the Maine Unfair Trade Practices Act (Count XV). Plaintiff voluntarily dismissed Count V (violation of Fourth Amendment based on excessive force) and Count XV (Maine Unfair Trade Practices Act) as to all remaining Defendants. *See* Court's Report (Doc. No. 30); Voluntary Dismissal (Doc. No. 31).
[3] Although Plaintiff does not cite to the Maine Civil Rights Act ("MCRA"), he alleges violations of his substantive rights under the Maine Constitution.  The MCRA provides the remedy for vindicating those rights and is patterned after 42 U.S.C. § 1983.  *See* 5 M.R.S.A. § 4682, *et seq.*; *Berube*, 506 F.3d at 85 ("The disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA.") (citing *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 123 (D. Me. 2004)).

be distilled into one legal issue: whether there was probable cause to arrest Plaintiff for criminal trespass.

## I.    THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF FOR CRIMINAL TRESPASS.

Plaintiff cannot establish liability against Defendants for a Fourth Amendment violation under 42 U.S.C. § 1983 for an unlawful seizure.  Nor can he establish liability under Maine law. The Fourth Amendment prohibits unreasonable searches and seizures, and provides that no warrant shall issue except on a showing of "probable cause, supported by oath or affirmation." U.S. Const. amend. IV. An exception to the warrant requirement exists when an officer makes an arrest for a crime committed in the officer's presence. *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008). Similarly, Maine law authorizes a police officer to make a warrantless arrest if a person "has committed or is committing in the officer's presence any Class D or Class E crime."  17 M.R.S.A. § 15(1)(B).  A warrantless arrest is reasonable "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004).

A Fourth Amendment violation actionable under § 1983 for an unlawful arrest requires a showing that the officers lacked probable cause to make the arrest.  *See Correia v. Feeney*, 620 F.3d 9, 12 (1st Cir. 2010); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 254 (1st Cir. 1996) ("At a bare minimum, if probable cause to arrest . . . existed, no unconstitutional deprivation occurred.").  Probable cause to arrest exists where "at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." *Roche*, 81 F.3d at 254 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Robinson v. Cook*, 706 F.3d 25, 33 (1st Cir. 2013).  (finding probable cause "where reasonably trustworthy facts and circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime.").

There is no dispute that Plaintiff was arrested by Officer Dugas for the crime of criminal trespass.  Under Maine law, a criminal trespass is committed when a person, "knowing that he is not licensed or privileged to do so. . . [r]emains in any place in defiance of a lawful order to leave that was personally communicated to that person by the owner or another authorized person."  17-A M.R.S. § 402(1)(D).  A criminal trespass under § 402(1)(D) is a Class E crime.  *Id.*  Where the property is open to the public, an order to leave the premises is lawful "only when an authorized person has some justification for requesting removal." *State v. Sanchez*, 2014 ME 50, ¶ 10, 89 A.3d 1084, 1087.

Here, the undisputed factual record establishes that Plaintiff entered the Town Manager's private office without permission or an invitation. SMF ¶ 14. As a result of her prior experiences with Plaintiff, the Town Manager felt unsafe meeting alone with him in her office. SMF ¶ 7. Plaintiff refused to leave her office after the Town Manager personally ordered Plaintiff to leave. SMF ¶¶ 15-16. Plaintiff's refusal to leave the Town Manager's office prevented her from being able to use her office to continue working. SMF ¶ 17. Police were summoned to remove Plaintiff from the Town Manager's office, with Officer Dugas and Sgt. Wilcox responding to the town office building.  SMF ¶ 20. Upon arrival at the Town Hall, Officer Dugas learned that the Town Manager had already ordered Plaintiff to leave her office.  SMF ¶ 20. The record, including the video from his body camera, unequivocally shows that Officer Dugas informed Plaintiff that he had to leave the Town Manager's office or face arrest. SMF ¶ 26, 28. Plaintiff refused repeated orders from Officer Dugas to leave the office.  SMF ¶¶ 24-29. Plaintiff's refusal to leave the premises in defiance of the Town Manager's and the police officer's lawful orders to leave gave Officer Dugas probable cause to arrest Plaintiff for criminal trespass. *See, e.g. State v. Armen*, 537 A.2d 1143, 1145–46 (Me. 1988) (removal justified where person remained in representative's office despite office manager

and police officers' instructions to leave). The record contains no evidence that the Town Manager or police officer lacked the authority to exclude Plaintiff from the premises. *State v. Gordon*, 437 A.2d 855, 857 (Me. 1981) (finding owner's authority delegable to police officer unless owner had somehow expressly limited authority). Based on the undisputed record, Officer Dugas had probable cause to arrest Plaintiff and his Fourth Amendment claim based on an unreasonable seizure fails as a matter of law.[4]

### A.  PLAINTIFF'S CLAIMS AGAINST SGT. WILCOX FAIL AS A MATTER OF LAW.

To the extent Plaintiff alleges that Sgt. Wilcox violated his Fourth Amendment right to be free from unreasonable seizures, Plaintiff's claim fails as a matter of law. Sgt. Wilcox's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006).  The undisputed facts demonstrate that Sgt. Wilcox, although a supervisory officer, did not participate in Plaintiff's arrest, except to assist in escorting Plaintiff out of the building after he was arrested by Officer Dugas. SMF ¶ 31, 33. "Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly

---

[4] For the same reasons, Plaintiff's Section 1983 malicious prosecution claim fails as a matter of law. A claim for malicious prosecution, which is also governed by the Fourth Amendment, requires a showing that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted). As discussed above, based on the undisputed record, Officer Dugas had probable cause to arrest Plaintiff for criminal trespass. Since Plaintiff cannot establish a lack of probable cause, his malicious prosecution claim fails as a matter of law. Moreover, the fact that the charges were ultimately filed reflects an agreement between the State and Plaintiff, not a termination in Plaintiff's favor.  *See* SMF ¶ 47. Finally, Plaintiff's malicious prosecution claim also fails because it is based entirely on his warrantless arrest for criminal trespass. A malicious prosecution claim is generally not actionable based upon a warrantless arrest because it did not constitute "legal process." *See Meehan v. Town of Plymouth*, 167 F.3d 85, 90 (1st Cir. 1999).

liable under section 1983 for another officer's" alleged unconstitutional conduct.[5]   *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006).

It is well-established that "a supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). In order to establish supervisory liability, a plaintiff must show: (1) that one of the supervisor's subordinates abridged the plaintiff's constitutional rights; and (2) that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (citations omitted). Plaintiff cannot meet the two elements required to establish supervisory liability as a matter of law. Officer Dugas had probable cause to arrest Plaintiff for criminal trespass so there was no violation of Plaintiff's constitutional rights.  There is also no evidence in the record showing deliberate indifference on the part of Sgt. Wilcox. Accordingly, Sgt. Wilcox is entitled to summary judgment.

## B.   THE FAIRFIELD OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if Officer Dugas and Sgt. Wilcox were mistaken in their belief that probable cause existed to arrest Plaintiff for criminal trespass, they are nevertheless entitled to qualified immunity. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *See Estate of Bennett v.*

---

[5] Plaintiff has waived all claims against Sgt. Wilcox based on so-called "bystander liability." *See, e.g. Calvi v. Rockland*, 470 F.3d 422, 430 & n.3 (1st Cir. 2006) (finding bystander claims waived where plaintiff "never articulated, or even vaguely insinuated" such claims in the complaint).  Alternatively, if the Court does not find that Plaintiff waived such claim, Plaintiff cannot establish the elements required to impose bystander liability upon Sgt. Wilcox. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990).

*Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008). A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). *See also White v. Pauly*, 137 S. Ct. 548, 551(2017). For purposes of qualified immunity, "the operative inquiry is not whether the defendant's actions actually abridged some constitutional right . . . but, rather, whether those actions were obviously inconsistent with that right." *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004) (citations omitted). Here, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." *Id.*

A reasonable officer under the circumstances confronted by Officer Dugas and Sgt. Wilcox would have understood that the officer was justified in ordering Plaintiff to leave the Town Manager's office and that probable cause existed to arrest Plaintiff for criminal trespass after he repeatedly refused to leave. In *State v. Armen*, 537 A.2d 1143 (Me. 1988), an officer was justified in ordering a member of the public to leave after he remained in a United States Representative's office and prevented an employee from doing her job, despite the fact that the person's initial entry was not a trespass and the person was peaceful. *Id.*, 537 A.2d 1143, 1144–46 (Me.1988). In light of *Armen*, it cannot be said that *no* reasonable officer confronted with the same circumstances as Officer Dugas would not have made the same choice. *See Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)) (recognizing that qualified immunity leaves "ample room for mistaken judgments."). Based on the undisputed record, it cannot be said that "probable cause clearly was lacking" at the time of Plaintiff's arrest and

therefore Officer Dugas and Sgt. Wilcox are entitled to qualified immunity.[6] *See Cox*, 391 F.3d at 32.

### C. DEFENDANTS GOULD AND FLEWELLING DID NOT SEIZE PLAINTIFF

Any claim that Defendants Gould or Flewelling are personally liable for an alleged unlawful arrest must fail as a matter of law because they did not seize Plaintiff. A Fourth Amendment violation actionable under section 1983 for an unlawful arrest necessarily requires a showing that there was a "seizure" of Plaintiff. Within the meaning of the Fourth Amendment, a "seizure" of a person occurs when there is "meaningful interference, however brief, with an individual's freedom of movement." *United States v. Jacobsen*, 466 U.S. 109, 114, n.5, 104 S. Ct. 1652, 1656 (1984). The record undeniably establishes that Defendants Gould and Flewelling did not directly participate in Plaintiff's arrest. Defendant Flewelling was standing in the hallway and Chief Gould was not even present at the time of Plaintiff's arrest. SMF ¶¶ 39-40.

As addressed further below, a supervisor can be liable under section 1983 for Fourth Amendment violations if he or she formulates a policy or engages in a practice that directly leads to a subordinate's violation of the Constitution. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). But "[i]t is well settled, however, that "supervisory liability under § 1983 cannot be predicated on a respondeat [superior] theory, but only on the basis of the supervisor's own acts or omissions." *Buchanan v. State of Maine*, 417 F. Supp. 2d 45, 69 (D. Me. 2006) (quoting *Aponte Matos v. Toledo Davila*, 135 F. 3d 182, 192 (1st Cir. 1988). Since they did not seize Plaintiff, his constitutional claims against Defendants Gould and Flewelling are therefore in their

---

[6] In his Complaint, Plaintiff also seeks a declaratory judgment that his constitutional rights were violated. A holding by the Court that Defendants are entitled to summary judgment as requested would dispose of the declaratory judgment claim. Even assuming, *arguendo* that Plaintiff could demonstrate a dispute of fact to survive summary judgment, the Court should dismiss the declaratory judgment claim on the grounds that there is no evidence that there is an ongoing violation of law to justify injunctive relief, and declaratory relief would serve no useful purpose. *See Green v. Mansour*, 474 U.S. 64, 73, 106 S. Ct. 423, 428 (1985).

official capacity as Chief of Police and Town Manager, respectively, and should be construed as claims against the Town, governed by the same "deliberate indifference" standard. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). These claims are addressed further below.

## II.   PLAINTIFF'S MUNICIPAL AND SUPERVISORY LIABILITY CLAIMS FAIL AS A MATTER OF LAW

### A.   THERE WAS NO UNDERLYING CONSTITUTIONAL VIOLATION

A municipality can be liable for Fourth Amendment violations in certain circumstances when its agents or employees commit constitutional violations, but only where the entity *itself* caused the constitutional violation at issue.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  In order to establish municipal liability against the Town, Plaintiff would need to prove the commission of an underlying constitutional violation on the part of a Fairfield police officer. *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 177-78 (1st Cir. 2008); *Norton v. City of South Portland,* 831 F.Supp.2d 340, 366 (D.Me.2011). For the reasons set forth above, Plaintiff cannot make that showing and therefore his claims against the municipality fail as a matter of law.

### B.   PLAINTIFF CANNOT MEET THE STANDARD FOR MUNICIPAL OR SUPERVISORY LIABILITY

Even assuming, *arguendo*, that there was a dispute of fact as to whether there was an underlying constitutional violation, Plaintiff cannot meet the standard for municipal liability as a matter of law. Governmental entities can be held liable under Section 1983 for constitutional violations committed pursuant to an unconstitutional custom, policy or practice, *Monell*, 436 U.S. at 690, but such liability exists "only where [the entity] *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton,*

*Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "This requires that the plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989). The First Circuit has explained that:

> The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior*, has set a very high bar for assessing municipal liability under *Monell*. The alleged municipal action at issue must constitute a "policy or custom" attributable to the City. Further, the Supreme Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference."

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir.2005) (citations omitted).

Here, given a generous reading, Plaintiff's Complaint suggests that the Town has a policy or custom of unlawfully arresting individuals for criminal trespass. However, there is no evidence in the record supporting that claim. Plaintiff's conclusory allegations and speculation, unsupported by the factual record, are insufficient to survive a motion for summary judgment. *See Estate of Bennett*, 548 F.3d at 177-78.

With respect to Plaintiffs' failure to train and supervise claims in Counts XIII and XIV, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality]." *City of Canton*, 489 U.S. at 390. A "failure to train" may only serve as a basis for liability where the conduct "'amounts to *deliberate indifference* to the rights of the persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury.'" *Norton*, 831 F. Supp. 2d at 365 (citing *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998)). The standard of fault for deliberate indifference is stringent and requires "proof that a municipal actor disregarded a known or obvious consequence of

his action." *Bd. of Cnty Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).   To establish liability based on a failure to train, it is not sufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."   *City of Canton*, 489 U.S. at 391.   A plaintiff must also prove that the deficiency in training actually caused the police officers' indifference to constitutional rights.   *Id.* at 391-92 (A failure to train under § 1983 "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.").

The undisputed evidence in the factual record accompanying this Motion refutes any claims that Plaintiff can meet the stringent standard of "deliberate indifference" to "obvious" deficiencies in training to survive summary judgment.   Plaintiff has not established a cognizable basis for a municipal liability claim based on a failure to train or supervise under *Canton* and its progeny.   *See, e.g. Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (citations omitted).   The training afforded to Fairfield police officers is comprehensive and ongoing and consistent with Maine law governing police officer training. SMF ¶¶ 48-50. Plaintiff has not produced a scintilla of evidence demonstrating that Chief Gould, the Town Manager, or the Town acted with deliberate indifference with regard to training or supervision of its officers regarding lawful arrests. *See Calvi*, 470 F.3d at 429.   The only record evidence is to the contrary: all Fairfield police officers must attend the Maine Criminal Justice Academy where they receive mandatory training, including training on lawful arrests.  SMF ¶¶ 48-49.  Furthermore, Fairfield police officers receive additional training on the Fairfield policies and procedures on those topics. SMF ¶ 50, 53.

As noted above, a supervisor can be liable if he or she formulates a policy or engages in a practice that directly leads to a subordinate's violation of the Constitution. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). However, courts also require that the supervisor be "either a primary actor, involved in, or a prime mover behind, the underlying violation." *Buchanan* at 69, quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 43-44 (1st Cir. 1999). There must also be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the supervisor's acts or omissions and the underlying violation by the subordinate. *Id.*, quoting *Camilo-Robles* at 44.  Stated otherwise, the supervisor's own conduct must lead "inexorably" to the underlying constitutional violation. *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir 1995). The Supreme Court decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) held that, given the unavailability of a master's vicarious liability for the acts of a subordinate agent in § 1983 actions, each supervising government official is only liable for his own misconduct. Because the supervisor is held only to account for his own conduct, Plaintiff must prove the same intentional conduct that violates the Constitution that is required of the subordinate actor. *Id.* at 1949.  As demonstrated by the undisputed factual record, Plaintiff cannot support a finding of "deliberate indifference" on the part of the Town of Fairfield, Chief Gould or Town Manager Flewelling or a finding of intentional conduct that violates the Constitution.  Accordingly, Defendants are entitled to summary judgment as to any municipal or supervisory liability claim.

**III.    PLAINTIFF'S STATE LAW TORT CLAIMS FAIL AS A MATTER OF LAW**

Plaintiff alleges state law tort claims of false arrest/imprisonment, malicious prosecution, assault, and battery (Count II); negligence/abuse of process (Count IX); intentional and negligent

infliction of emotional distress[7] (Counts X & XI); defamation and false light (Count XII), and invasion of privacy – false light (Count XVI).

### A.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE FOR HIS STATE LAW TORT CLAIMS

Based on the undisputed facts, Plaintiff cannot establish a *prima facie* case for his state law tort claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986) ( "[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."); *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, 763 ("In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim.").

As discussed fully above, since the seizure of Plaintiff by Officer Dugas was supported by probable cause, Plaintiff's state law tort claims of false arrest/imprisonment fail as a matter of law. Similarly, his malicious prosecution claim fails because Plaintiff would have to prove the absence of probable cause.  *See Trask v. Devlin*, 2002 ME 10, ¶ 11, 788 A.2d 179,182. There is also nothing in the record to show that any criminal proceedings were terminated in Plaintiff's favor or that Defendants acted with malice, both of which are required elements for a malicious prosecution claim under Maine law.  *Id*. Defendants are also entitled to summary judgment on Plaintiff's assault

---

[7] Pursuant to the Court's Report (Doc. No. 30) and ECF Notice dated January 3, 2018, Plaintiff was required to submit a memorandum with respect to his Negligence/Abuse of Process and Intentional/Negligent Infliction of Emotional Distress claims by January 13, 2018. Plaintiff was required to represent that there is a basis in law and sufficient proof to establish a *prima facie* case as to each claim or indicate his consent to voluntary dismissal. Plaintiff failed to file the memorandum.  Defendants have therefore addressed these claims out of an abundance of caution, but contend that Plaintiff has waived his ability to pursue these claims by failing to submit the required memorandum.

and battery claims. "Under Maine law, the torts of assault and battery by a law enforcement officer require either a false arrest or the use of excessive force during or after taking an individual into custody." *Santoni v. Potter*, 369 F.3d 594, 603 (1st Cir. 2004) (citing *Bale v. Ryder,* 290 A.2d 359, 360 (Me.1972)).  For the reasons discussed above, Plaintiff cannot, as a matter of law, demonstrate that he was falsely arrested. And there is no evidence in the record that Defendants used excessive force in connection with the arrest; in fact, Plaintiff has already dismissed his § 1983 claims based on excessive force. *See supra* note 2; SMF ¶¶ 37-38.

Plaintiff also cannot make out a *prima facie* claim for intentional or negligent infliction of emotional distress.  A claim for intentional infliction of emotional distress requires that the defendant: (1) intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it." *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22–23.  The tort of negligent infliction of emotion distress similarly requires severe emotional distress.  *Fuller v. Cent. Maine Power Co.*, 598 A.2d 457, 459 (Me. 1991) ("We have never held that liability can be imposed upon a defendant for the negligent infliction of emotional distress of some degree less than severe.").

Based on the undisputed record, including Plaintiff's answers to interrogatories and sworn deposition testimony, he is not claiming the severe emotional distress that those claims require.[8]

---

[8] In seeking to avoid having to produce Plaintiff's mental health records, Plaintiff's counsel has consistently represented to counsel and the court that, despite the allegations in the Complaint, Mr. Pantermoller was only seeking a "garden variety" emotional claim and not the severe mental anguish that would support a claim for intentional or negligent infliction of emotional distress. *See* SMF ¶ 61.

14

SMF ¶¶ 61-62. Being removed from the Town Hall and having one's name in the paper does not rise to the level of "extremely intense" emotional distress or outrageous conduct that is "so intense that no reasonable person would be expected to endure it." *See Lyman v. Huber*, 2010 ME 139, ¶ 21, 10 A.3d 707, 712; *cf. Holland v. Sebunya*, 2000 ME 160, ¶¶ 17-18, 759 A.2d 205, 211–12 ("Although most people would experience distress at being removed from a public meeting, it cannot be said that the "ordinarily sensitive person" would "be unable to adequately cope with the mental stress engendered" by that removal.").

In most cases, expert testimony is required to establish that plaintiff's emotional injury qualifies as severe enough to meet the standard for recovery. *Lyman*, 2010 ME 139, ¶ 23 ("[A] plaintiff must prove that [his] emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm. We do not preclude the possibility that this can be achieved without the corroborating testimony of an expert medical or psychological witness. That possibility is, however, remote."). Here, Plaintiff never designated an expert, nor provided any objective evidence, such as medical records, of his alleged emotional distress. SMF ¶ 60, 62. Based on the undisputed record, Plaintiff cannot establish a *prima facie* case of severe emotional distress, a necessary element of both torts.

Plaintiff's abuse of process claim also fails as a matter of law. Plaintiff does not specify, and there is no evidence of what legal process was abused and there is no evidence of any improper or ulterior motive on the part of Defendants. *See Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189. Plaintiff's defamation and false light claims are unsupported by any record evidence that the published statement or facts about Plaintiff's arrest were false. *See Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me.1991). Plaintiff's invasion of privacy claim also fails

because, *inter alia*, there can be no liability for giving publicity to facts that are already matters of public record. *Id.*

In addition, all of Plaintiff's state law tort claims fail as a matter of law because there is nothing in the record to establish causation. As noted above, causation is a necessary element in a cause of action for all the torts. In order to establish a *prima facie* claim, there has to be a causal connection between Plaintiff's alleged injuries and the alleged tortious conduct of Defendants. Plaintiff cannot, as a matter of law, establish causation. If "there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff," then the defendant is entitled to summary judgment. *Salvesen*, 2016 ME 100, ¶ 21. Here, there is insufficient evidence for a jury to reasonably find or infer that there was a causal connection between Plaintiff's alleged damages and the actions of Defendants. There has to be proof that "there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 17, 60 A.3d 759, 763. Here, a jury could not find proximate cause without "speculation or conjecture" and therefore Defendants are entitled to summary judgment on Plaintiff's state law tort claims as a matter of law. *See id.* ¶ 19.

### B. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY UNDER THE MAINE TORT CLAIMS ACT.

Plaintiff's state law tort claims are governed by the Maine Tort Claims Act ("MTCA"). *See* 14 M.R.S.A. §§ 8101, *et seq.* Even assuming *arguendo* that Plaintiff could establish a *prima facie* case for each tort, Defendants are entitled to immunity under the MTCA. Governmental employees are entitled to personal immunity under the MTCA from civil liability for "performing or failing to perform any discretionary function or duty . . . ." 14 M.R.S.A. §8111(1)(C). This is true "whether

16

or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." *Id.* The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment. 14 M.R.S.A. § 8111(1)(E). The only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith." *Id.*

Because Plaintiff's state law tort claims all arise out of his arrest, the disposition of Plaintiff's section 1983 claim informs the disposition of Plaintiff's claims under the MTCA. *See Berube v. Conley*, 506 F.3d 79, 85–86 (1st Cir. 2007); *see also Parker v. Dall-Leighton, et al.*, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017). Unless the evidence could reasonably be construed to show that the conduct underlying Plaintiff's claims of assault, battery, negligence, intentional/negligent infliction of emotional distress, defamation, false light, and invasion of privacy "was so egregious as to clearly exceed any discretion" the individual defendants had, they are entitled to immunity. *See Dimmitt v. Ockenfels*, 220 F.R.D. 116, 125 (D. Me. 2004). Here, there is no evidence that would allow a reasonable factfinder to conclude that the conduct of the individual Defendants was so egregious that it "fall[s] outside the zone of immunity provided by state law." *Parker*, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017). *See also Berube v. Conley*, 506 F.3d 79, 85–86 (1st Cir. 2007). Plaintiff was arrested after refusing to leave the Town Manager's office after he was given multiple orders to leave, ample opportunity to leave, and several warnings that he would be arrested if he did not leave. He was arrested and handcuffed without incident and the Chief subsequently confirmed the arrest to the media. This does not come close to rising to the level of egregious conduct necessary to fall outside the zone of immunity. *See Holland v. Sebunya*, 2000 ME 160, ¶¶ 17-18, 759 A.2d 205, 211–12.

### C.  The Town is Absolutely Immune under the Maine Tort Claims Act.

The MTCA begins with a broad grant of governmental immunity from tort claims: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages."  14 M.R.S.A. § 8103.  For purposes of immunity under the MTCA, a governmental entity includes "political subdivisions," such as a city or town.  14 M.R.S. § 8102(2), (3).  Defendant Town of Fairfield is a "governmental entity" within the meaning of the MTCA.  Section 8104-A sets forth the limited exceptions to governmental entity immunity.  *See* 14 M.R.S.A. § 8104-A.  In interpreting the exceptions to immunity, courts "start with the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673; *Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84, 87.

Plaintiff's state law tort claims against the Town must fail as a matter of law because none of the alleged acts of the Town implicates a duty owed or conduct that falls within the enumerated exceptions to governmental liability.  *See* 14 M.R.S.A. § 8103, 8104-A.  There is no traditional vicarious liability available against governmental entities as employers, other than under § 8104-A. Moreover, the Town has not waived its state tort immunity through the purchase of any policy of liability insurance.  *See* 14 M.R.S.A. § 8116 ("If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage."); SMF ¶¶ 54-56.  As a member of the Maine Municipal Association Property & Casualty Pool ("MMA"), a self-insured municipal risk pool, the Town's coverage is limited to areas where the Town is not immune.  SMF ¶ 55. This Court has previously considered identical coverage with the MMA, and has concluded that it did not constitute a waiver of immunity. *See, e.g. Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 180 (D.

18

Me. 2009),  *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1237-38 (D. Me. 1996). The

language in the Town of Fairfield's MMA Coverage Certificate is identical to the language

considered by this Court in *Steeves* and *Comfort* and found not to waive immunity.  *See Steeves*,

600 F. Supp. 2d at 180; *Comfort*, 924 F. Supp. At 1237-38; SMF ¶ 55.  The Town of Fairfield has

not waived its immunity and Plaintiff's state tort claims are therefore barred under the MTCA.

### D.  EXCEPT FOR HIS FALSE ARREST CLAIM, PLAINTIFF FAILED TO COMPLY WITH THE NOTICE PROVISIONS OF THE MTCA

Even if there was a dispute of fact regarding whether Defendants are entitled to immunity

under the MTCA, Plaintiffs claims nonetheless fail as a matter of law. With the exception of

Plaintiff's claim for false arrest, which fails for all of the reasons discussed above, Plaintiff's state

law tort claims are barred because he failed to comply with the notice provisions of the MTCA. *See*

14 M.R.S.A. § 8107.   Plaintiff was required to file a written notice of claim within 180 days after

his claim or alleged cause of action accrued.  *Id.* § 8107(1).  The statutory notice requires, *inter*

*alia*, a "concise statement of the basis of the claim," the name of any governmental employee

involved, a "concise statement of the nature and extent of the injury claimed to have been suffered,"

and the amount of monetary damages claimed.  *Id.* § 8107(1)(A)-(E). Unless the notice provision is

substantially complied with, "no claim or action shall be commenced against a governmental entity

or employee."  *Id.* § 8107(4).

On September 27, 2016, Plaintiff sent the Town an "Intent to sue Notice" providing notice

of his claim for false arrest against the Town and the Police Department.  SMF ¶¶ 51-58. He

addressed the notice to Defendants Flewelling and Gould.  Plaintiff only asserted that his "arrest

was illegal and without merit or probable cause to do so." SMF ¶ 59. Plaintiff did not provide notice

that he intended to claim malicious prosecution, assault, battery, negligence, abuse of process,

intentional and negligent infliction of emotional distress, defamation, false light, and invasion of

privacy.  The only claim that the Town received notice of was his false arrest claim. He also failed

to name Officer Dugas and Sgt. Wilcox, and failed to include an amount of claimed damages.

Therefore, all of Plaintiff's state law tort claims, except his false arrest claim, are barred for failing

to comply with the notice provisions provided under the MTCA.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court enter summary judgment in

their favor as to all of Plaintiff's Complaint.

Dated at Portland, Maine this 19th of January, 2018

/s/ *Edward R. Benjamin, Jr.*
/s/ *Kasia S. Park*
Edward R. Benjamin, Jr., Esq.
Kasia S. Park, Esq.

Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com
*Attorneys for Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I electronically filed the foregoing Defendants'

Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court

using the CM/ECF system which will send notification of such filings(s) to all parties of record.


*/s/ Kasia S. Park*
Kasia S. Park
*Attorney for Defendants*
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
kpark@dwmlaw.com

21