# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MARK PANTERMOLLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:17-cv-00223-JDL |
| TOWN OF FAIRFIELD, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

In June 2016, Mark Pantermoller was arrested by Town of Fairfield Police Officer Casey Dugas and Police Sergeant Matthew Wilcox after he refused to comply with their orders to leave the office of the Town Manager Michelle Flewelling, located in the Town Hall. He brings this civil action challenging the legality of his arrest against the Town of Fairfield, Town Manager Flewelling, Officer Dugas, Sergeant Wilcox, and Chief of Police Thomas Gould (collectively, "the Town"). *See* ECF No. 3-3 at 1.

Pantermoller's Complaint dated May 23, 2017, (ECF No. 3-3) asserts sixteen separate constitutional and tort claims. Since the filing of the Complaint, Pantermoller has voluntarily dismissed two counts, *see* ECF Nos. 30, 31, and the Town has moved for summary judgment on the fourteen remaining counts (ECF No. 35). Pantermoller has not opposed the Town's motion.

## II. FACTUAL BACKGROUND

The summary judgment record establishes the following undisputed material facts: Flewelling first met Pantermoller in December 2015, shortly after she became the Town Manager. Pantermoller came to her office to discuss his belief that the Town of Fairfield was involved in a series of Facebook pages that featured nude or revealing photos of unsuspecting women and girls, each titled "Purge of Maine." *See* ECF No. 36-1 at ¶ 6. Flewelling assured him that she had no knowledge of the Town having any involvement with the Facebook pages.

Sometime later, Pantermoller returned to Flewelling's office and accused her and the Fairfield Police Department of covering up the Town's involvement with the Purge of Maine pages. Flewelling brought Police Chief Gould into the meeting so that they could jointly assuage Pantermoller's concerns. When Pantermoller became increasingly argumentative, Flewelling told him that she was uncomfortable and would no longer meet with him in her office.

On May 9, 2016, Pantermoller disrupted a Town Council meeting with similar accusations. In the midst of the meeting, Pantermoller suddenly approached the stage where Flewelling was seated with the council members, yelling that Flewelling knew about the Police Department's involvement with the "Purge of Maine" pages. *See id.* at ¶ 8. After several warnings to cease the disruption, the Fairfield police escorted Pantermoller out of the meeting. *See id.*, ECF No. 36-2 at ¶ 7. The next day, Pantermoller came to the Police Station and accused Chief Gould and other police officers of having been involved with the "Purge of Maine" pages. *See* ECF No. 36-2 at ¶ 8. Chief Gould spoke with Pantermoller, but the discussion became heated

and Chief Gould asked Pantermoller to leave the station. *See id.* Later that day, Chief Gould received a call from a Town Hall employee asking for assistance in removing Pantermoller from the premises because he was being disruptive. *See id.*

Pantermoller returned to the Town Hall on June 30, 2016. *See* ECF No. 36 at ¶ 11. While there, Pantermoller entered Flewelling's office and sat down in a chair, explaining that he needed to speak with her. *See id.* at ¶¶ 12-13. Flewelling agreed to talk with Pantermoller, but only if they spoke in the hallway rather than in her office. *See id.* at ¶ 15. Nonetheless, Pantermoller stayed in Flewelling's office. *See id.* at ¶ 16. Another employee in the Town Hall soon called the Fairfield Police Department, which dispatched Officer Dugas and Sergeant Wilcox in response. *See id.* at ¶¶ 18-19. Officer Dugas – who was wearing a body camera at the time – went to Flewelling's office first. *See id.* at ¶¶ 20-21. At that point, Flewelling was in the hallway and Pantermoller was in her office. *See id.* at ¶ 21. Officer Dugas asked Pantermoller to leave and Pantermoller refused. *See id.* at ¶¶ 22-25. Officer Dugas twice warned Pantermoller that if he refused to leave, he would be arrested for criminal trespass. *See id.* at ¶¶ 26, 28. After the second warning, Pantermoller said "arrest me," and Officer Dugas placed Pantermoller under arrest. *See id.* at ¶¶ 28-30.[1]

---

[1] The relevant portion of the transcript from the video recorded by Officer Dugas's body camera states:

> Dugas: (entering the office) I understand it's time to go, Mark?
> Pantermoller: No, this is the people's office, [I] can to talk to the Town Manager if I could.
> Dugas: OK, apparently you're not welcome here at the moment, so you're going to have to leave.
> Pantermoller: This is my town office, I wanna talk to the Town Manager.
> Dugas: It's no different than the town meeting, Mark. You're being asked to leave you need to leave. If you don't leave, I'll arrest you for criminal trespass.
> Pantermoller: At my own town office?
> Dugas: Yup.

3

Officer Dugas proceeded to handcuff Pantermoller. *See id.* at ¶ 32. Sergeant Wilcox, who arrived on the scene during Officer Dugas' and Pantermoller's interaction, assisted Officer Dugas in escorting Pantermoller out of the building and placing him in a police vehicle. *See id.* at ¶¶ 31, 33. Officer Dugas drove Pantermoller to the Somerset County Jail, where he was transferred to the custody of correction officers. *See id.* at ¶ 34.

After the arrest, Wilcox briefed Chief Gould regarding Pantermoller's arrest. *See id.* at ¶¶ 39, 41. Chief Gould, when asked by members of the press, confirmed that Pantermoller was arrested for criminal trespass, explained that Pantermoller refused to leave the Town Hall voluntarily, and described Pantermoller's conduct as disruptive. *See id.* at ¶¶ 42-44. Flewelling, Officer Dugas, and Sergeant Wilcox never spoke with the press regarding Pantermoller's arrest. *See id.* at ¶ 45.

Pantermoller does not claim to have suffered any physical injury or to have sought mental health treatment due to his arrest. *See id.* at ¶¶ 37, 62.

---

Pantermoller: Oh. Under what condition? Why?
Dugas: Because you've been giv – been given a lawful order to leave.
Pantermoller: Well, that means I'm being given a lawful order every time I come down here. I need a specific reason why I'm being told to leave.
Dugas: I don't need to give you one. We can do it one of two ways, Mark. You can wal- get up and walk out, or we can handcuff you and take you to jail.
Pantermoller: I need to know why I'm being asked to leave.
Dugas: That's neither here nor there, you're being asked to leave.
Pantermoller: Every time I come in here, I'm asked to leave. Uh, that's not serving the people. This is the people's office and I wish to talk to my Town Manager.
Dugas: Apparently the Town Manager does not wish to speak to you.
Pantermoller: Uhm, well, she's my Manager, she has to.
Dugas: Mark. (getting louder, speaking over Pantermoller) Mark, this is your last chance. Mark this is your warning for criminal trespass.
Pantermoller: Arrest me.
Dugas: You'll. . . Stand up, you're under arrest.

ECF No. 36-6 at 14:55:20-14:56:30.

4

## III. PROCEDURAL BACKGROUND

Pantermoller filed his Complaint (ECF No. 3-3) in the Skowhegan District Court on June 6, 2017. ECF No. 1 at 1. Soon thereafter, on June 15, the Town removed the case (ECF No. 1) to this Court.

In December 2017, the parties attended a pre-filing conference in anticipation of the Town's Motion for Summary Judgment. *See* ECF No. 30. At the conference, Pantermoller voluntarily dismissed Count V of his Complaint, alleging violations of the Fourth Amendment of the United States Constitution and the corresponding provision of the Maine Constitution. *See id.* at 2. He also voluntarily dismissed the Fairfield Police Department as a defendant. *See id.* Additionally, Pantermoller agreed to reconsider the following counts and confirm – via a memorandum to be submitted to the Town's counsel – the existence of a legal basis and sufficient proof to establish a prima facie case with respect to each count: Negligence and Abuse of Process (Count IX), Intentional Infliction of Emotional Distress (Count X), Negligent Infliction of Emotional Distress (Count XI), and violations of the Maine Unfair Trade Practices Act (Count XV). *See id.* at 2.

On December 29, 2017, Pantermoller voluntarily dismissed Count XV, alleging violations of the Maine Unfair Trade Practices Act. *See* ECF No. 31. On January 19, 2018, the Town filed its Motion for Summary Judgment (ECF No. 35). Because Pantermoller failed to timely submit a memorandum with respect to Counts IX, X, and XI, on January 22, 2018, an Order to Show Cause issued (ECF No. 38) which required him to voluntarily dismiss those counts or to file a verified response showing cause as to why they should not be dismissed. Four days later, Pantermoller filed his

"Response to Order to Show Cause" (ECF No. 39), which asserted, without additional explanation, that he believed Counts IX, X, and XI were "legitimate claims." *See* ECF No. 39.

Pantermoller's response to the Town's Motion for Summary Judgment was due on February 2, 2018. *See* ECF No. 30 at 2, ECF No. 35. To date, he has not filed a response to the Motion.

### IV. LEGAL ANALYSIS

**A.    Summary Judgment Standard**

When a motion for summary judgment is filed, the opposing party has 21 days to file a written objection, otherwise "the opposing party shall be deemed to have waived objection." D. Me. LR 7(b). The First Circuit Court of Appeals has interpreted the requirements of Rule 7(b) "so as to preserve [its] scope and validity without running afoul of the requirements of Rule 56 [of the Federal Rules of Civil Procedure]." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002) (quoting *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam)). Under Rule 56 courts cannot automatically grant summary judgment, even if "no opposing evidentiary matter is presented." *Id.* at 7 (quoting *Jaroma*, 873 F.2d at 20). Thus, I must determine whether summary judgment is appropriate by discerning whether there is a genuine issue as to any material fact. *Id.* at 8. In doing so, I will "accept as true all material facts set forth by the moving party with appropriate record support." *Id.* (quoting *Jaroma*, 873 F.2d at 21). "If those facts entitle the moving party to judgment

as a matter of law, summary judgment will be granted." *Id.* (quoting *Jaroma*, 873 F.2d at 21) (emphasis omitted).[2]

I address Pantermoller's constitutional claims first, and then turn to his state law tort claims.

**B.     Constitutional Claims**

**1. Due Process Claims**

Counts I, VI, and VII of the Complaint allege due process violations pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and their analogues in the Maine Constitution.[3] In essence, Pantermoller claims that the police lacked probable cause for his arrest, and, therefore, the arrest violated his substantive due process rights. *See, e.g.*, ECF No. 3-3 at ¶¶ 62, 95-96, 102.

Pantermoller's Fourteenth Amendment claim (Count VII) is not viable. The Supreme Court has made clear that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim," and the Fourth Amendment addresses pretrial deprivations of liberty. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation marks omitted). This

---

[2] Local Rule 56(f) further provides for admission of all material facts which are supported by record citations and not properly controverted by the opposing party.  D. Me. LR 56(f); *see also Williams v. Reed*, 1:16-cv-0211-DBH, 2017 WL 3203394 at *1 (D. Me. July 26, 2017).

[3] The Complaint does not identify the provisions of the Maine Constitution Pantermoller bases his claim on, but I construe his due process claims as referring to Article I, section 6, which guarantees that "[t]he accused shall not be . . . deprived of life, liberty, property or privileges, but by judgment of that person's peers or the law of the land." ME. CONST. art. I, § 6.  The Law Court has found that the due process rights guaranteed by Article I, section 6 are coextensive with those guaranteed by the Fourteenth Amendment of the United States Constitution.  *See Northup v. Poling*, 761 A.2d 872, 875 n.5 (Me. 2000).

7

means that "the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable cause." *Britton v. Maloney*, 196 F.3d 24, 28 (1st Cir. 1999).

Here, Pantermoller's claims stem from his allegation that the police lacked probable cause to arrest him in June 2016, an assertion that does not give rise to a violation of the Fourteenth Amendment. Moreover, the undisputed material facts demonstrate that Pantermoller's arrest was, in fact, supported by probable cause; by refusing the order to leave Flewelling's office after being warned, he committed the misdemeanor crime of criminal trespass in the presence of an officer. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also* 17-A M.R.S.A. § 402(1)(D) (2017) (criminal trespass occurs when a person, "knowing that [he or she] is not licensed or privileged to do so . . . [r]emains in any place in defiance of a lawful order to leave that was personally communicated to that person by the owner or another authorized person.").[4] Thus, the Town is entitled to summary judgment on the Fourteenth Amendment claim in Count VII.

The Fifth Amendment claims (Counts I, VI, and VII) are likewise unavailing. The due process clause of the Fifth Amendment "applies only to actions of the federal government—not to those of state or local governments." *Martínez-Rivera v. Sánchez*

---

[4] Where, as here, criminal trespass occurs in a place open to the public, an order to leave is lawful when "an authorized person has some justification for requesting removal." *State v. Sanchez*, 89 A.3d 1084, 1087 (Me. 2014). Police officers are considered "authorized persons" if someone with the authority to request removal delegates that authority to the police. *State v. Gordon*, 437 A.2d 855, 857 (Me. 1981).

8

*Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (internal quotation marks omitted) (affirming the propriety of dismissing a Fifth Amendment claim because the plaintiff did not allege that any of the defendants were federal actors). In this case, Pantermoller does not bring suit against any federal actors. Accordingly, there is no viable claim for a violation of his due process rights under the Fifth Amendment. Thus, the Town is entitled to summary judgment on the Fifth Amendment claims in Counts I, VI, and VII.

### 2. Equal Protection Claims

Count VIII of the Complaint alleges a violation of Pantermoller's right to Equal Protection under the Fourteenth Amendment of the United States Constitution and the analogous clause in the Maine Constitution.[5] In order to avoid summary judgment on his equal protection claim, Pantermoller must "tender competent evidence that a state actor intentionally discriminated against [him] because [he] belonged to a protected class." *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 354 (1st Cir. 1995); *see also Burrell v. Anderson*, 353 F. Supp. 2d 55, 76 (D. Me. 2005). Pantermoller, in his Complaint, does not assert membership in any protected class, *see* ECF No. 3-3 at ¶¶ 107-112, and the summary judgment record likewise contains no indication that he belongs to a protected class. Accordingly, his claim that his right to equal protection under the Fourteenth Amendment was violated cannot succeed, and the Town is entitled to summary judgment on Count VIII.

---

[5] The protections afforded by the equal protection clause of the Maine Constitution and the United States Constitution are coextensive. *In re* D.P., 65 A.3d 1216, 1220 n.4 (Me. 2013). Thus, my discussion of the federal equal protection claim applies to the claim asserted under the Maine Constitution.

## C. State Law Tort Claims

In addition to his constitutional claims, Pantermoller brings the following state law tort claims: False Arrest, Malicious Prosecution, and Assault and Battery (Count II), False Arrest and False Imprisonment (Counts III and IV), Negligence and Abuse of Process (Count IX), Intentional Infliction of Emotional Distress (Count X), Negligent Infliction of Emotional Distress (Count XI), Defamation and False Light (Count XII), Negligent Hiring (Count XIII), Negligent Supervision and Training (Count XIV), and Invasion of Privacy (False Light) (Count XVI).

The Town argues that the individual defendants – Flewelling, Chief Gould, Sergeant Wilcox, and Officer Dugas – are shielded from liability for the state law tort claims by the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. § 8101, *et seq.* (2017). Under the MTCA, "state employees are generally immune from suit unless their conduct was so egregious as to clearly exceed any discretion the officers could have possessed under the circumstances." *Parker v. Dall-Leighton*, 2:17-cv-216-GZS, 2017 WL 6210892 at *7 (D. Me. Dec. 8, 2017) (internal quotation marks omitted); *see also* 14 M.R.S.A. §§ 8111(1)(C), 8111(1)(D) ("[E]mployees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty . . . [and for a]ny intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith.").

Where, as here, a plaintiff brings constitutional and state law tort claims based on the same conduct, the disposition of the plaintiff's constitutional claims informs

the disposition of claims under the MTCA. In other words, if the court believes an officer's conduct was circumstantially reasonable enough to avoid a constitutional violation, it "cannot be said to be so egregious as to deprive the officers of the immunity defense" provided by the MTCA. *Berube v. Conley*, 506 F.3d 79, 86 (1st Cir. 2007). In this instance, the Town is entitled to summary judgment on all of Pantermoller's constitutional claims. *See supra*, at 9. Moreover, Pantermoller committed a criminal offense in the presence of Officer Dugas and Sergeant Wilcox, and, in a "long line of cases, [the Supreme Court has] said that when an officer has probable cause to believe a person committed even a minor crime in his presence . . . the arrest is constitutionally reasonable." *Virginia v. Moore*, 128 S. Ct. 1598, 1604 (2008). Thus, because none of the officers or their supervisors committed any constitutional violations during Pantermoller's arrest, and because the undisputed facts demonstrate that each individual defendant acted within the bounds of his or her discretion, they are each entitled to summary judgment with respect to the state law tort claims that share a factual basis with the constitutional claims (Counts II, III, IV, IX, X, XI, XIII, and XIV).

The only state law claims that do not share a factual basis with the constitutional claims are those for defamation, false light, and invasion of privacy in Counts XII and XVI. These claims are based on Pantermoller's contention that Chief Gould's statement to the press – in which he called Pantermoller's behavior "disruptive" and told a reporter that Pantermoller was arrested because he refused to leave the building – was untrue. *See* ECF No. 3-3 at ¶¶ 128-129, 149-153. However, the undisputed facts establish that Chief Gould's statement was truthful;

11

Pantermoller was impeding Flewelling's ability to work by refusing to leave her office, and it is apparent in the body camera video that he refused to leave when repeatedly asked and ordered to do so. *See supra* note 1, at 4. Further, Pantermoller has failed to articulate any facts that support the conclusion that Chief Gould's statement was "egregious" or made in bad faith. *See Parker*, 2017 WL 6210892 at *7 (explaining that, in order for state employees to be liable for tortious conduct, their conduct must be so egregious as to clearly exceed their discretion under the circumstances); *see also* 14 M.R.S.A. §§ 8111(1)(C), 8111(1)(E) ("[E]mployees of governmental entities shall be absolutely immune from personal civil liability for . . . [a]ny intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith."). Accordingly, the individual defendants are entitled to summary judgment with respect to counts XII and XVI.

In addition, the Town of Fairfield is immune from suit under the MTCA. "Under the [MTCA], a municipality is immune from suit on any and all tort claims except as expressly provided by statute."[6] *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 126 (D. Me. 2004); *see also* 14 M.R.S.A. § 8103. Those exceptions – enumerated in 14 M.R.S.A. § 8104-A – do not include any of the conduct established by the undisputed facts of this case. *See* 14 M.R.S.A. § 8104-A; *see also New Orleans Tanker Corp. v. Dep't of Transp.*, 728 A.2d 673, 675 (Me. 1999) (explaining that courts considering a

---

[6] Under the MTCA, a municipality's maintenance of insurance coverage can give rise to a waiver of immunity. 14 M.R.S.A. § 8116. The summary judgment record establishes that the Town of Fairfield's limited liability coverage applies only to areas in which it is not immune from suit, therefore the immunity exception for insured areas does not apply. ECF No. 36 at ¶ 55.

governmental entity's liability under the MTCA "start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed"). Thus, the Town of Fairfield is entitled to summary judgment with respect to the state law tort claims.

## V. CONCLUSION

For the foregoing reasons, the Town's Motion for Summary Judgment (ECF No. 35) is **GRANTED** with respect to all claims.

**SO ORDERED.**

**Dated this the 20th day of March, 2018.**

                                                           /s/ JON D. LEVY
                                                  **U.S. DISTRICT JUDGE**